**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**26-78**

**ENTERGY LOUISIANA, LLC**

**VERSUS**

**MUDD FAMILY PARTNERSHIP, LLC, ET AL.**

**Consolidated With 26-81**

**ENTERGY LOUISIANA, LLC**

**VERSUS**

**ALLISON CLAIRE VAIL, ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. C-479-25 and NO. C-478-25
HONORABLE CRAIG STEVE GUNNELL, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**WILBUR L. STILES**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Van H. Kyzar, Ledricka J. Thierry, and Wilbur L. Stiles, Judges.

**AFFIRMED.**

**Philip A. Franco**
**Jeffrey E. Richardson**
**Marshal A. Hevron**
**Timothy M. Brinks**
**Paige H. Franckiewicz**
**Adams & Reese, LLP**
**701 Poydras Street, Suite 4500**
**New Orleans, LA 70139**
**(504) 581-3234**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
　　**Entergy Louisiana, LLC**

**Sean D. Moore**
**Brett P. Fenasci**
**Chynna M. Anderson**
**Entergy Services, LLC**
**639 Loyola Avenue, Suite 2600**
**New Orleans, LA 70113**
**(504) 576-7048**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
　　**Entergy Louisiana, LLC**

**Stephen D. Polito**
**Derek G. Hoffman**
**Stockwell, Sievert, Viccellio, Clement & Shaddock, L.L.P.**
**Post Office Box 2900**
**Lake Charles, LA 70602**
**(337) 436-9491**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
　　**Entergy Louisiana, LLC**

**David Paul Bruchhaus**
**Jamie C. Gary**
**Lenzi C. Hebert**
**Thomas A. Pousson**
**Mudd Bruchhaus & Keating, L.L.C.**
**517 W. College Street**
**Lake Charles, LA 70605**
**(337) 562-2327**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
　　**Mudd Family Partnership, LLC, et al.**
　　**Deborah Ann Berken Clement, et al.**

**Timothy M. Cassidy, Sr.**
**Timothy M. Cassidy, Sr., APLC**
**Post Office Box 1446**
**Jennings, LA 70546**
**(337) 824-7322**
**COUNSEL FOR DEFENDANTS/APPELLEES:**

**Allison Claire Vail**
**Brandon James Vail**
**Kristie Marie Vail Schultz**

**STILES, Judge.**

Entergy Louisiana, LLC appeals the trial court's granting of exceptions of prematurity and the resulting dismissal of its expropriation actions filed against the defendant landowners. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

Entergy Louisiana, LLC seeks to obtain new servitudes to replace historical transmission line servitudes that permit electric service in South Louisiana. Titling its effort REMAP 99 Project, Entergy contacted affected landowners with offers of compensation for the renewed servitudes as well as a "Notice Pursuant to Louisiana Revised Statute 19:2.2."

While certain landowners accepted Entergy's offers of "just compensation," two groups of Jefferson Davis Parish landowners did not. Entergy instituted these matters, filing Petitions for Expropriation of Personal Servitudes of Rights of Use under two separate docket numbers. Entergy named the owners of thirteen tracts of land as defendants in the suit assigned Docket Number C-479-25 and the owners of four tracts of land as defendants in the suit assigned Docket Number C-478-25. Entergy sought a judgment in its favor for the personal servitudes of rights of use for delineated purposes, including "the right to locate, construct, operate and maintain power lines to be constructed on a single line of structures on or over Defendants' properties, with such accessory rights necessary for the exercise of such servitudes . . . ."

Defendants responded with the filing of exceptions of prematurity, vagueness and ambiguity, and no cause of action. As for the exceptions of prematurity, pertinent here, Defendants maintained that, before suit was filed, they had received a letter from Entergy representing that it was "intended to satisfy the requirements of

La.R.S. 19.2.2." Although the letter and its enclosures indicated that Entergy is regulated by the Louisiana Public Service Commission, "nowhere in this document nor any other document provided by Entergy to the Landowners lists, sets forth, states, or identifies in any way the LPSC's website or telephone number." Defendants thus argued that Entergy had not complied with the mandatory notice requirements of La.R.S. 19:2.2(B)(6) and, in turn, the filing of its petitions was premature pursuant to La.R.S. 19:5.[1]

In its opposition to the exception of prematurity, Entergy pointed out that its notice to Defendants positively stated: "Entergy Louisiana, LLC is regulated by the Louisiana Public Service Commission." Entergy asserted that both the LSPC website and its telephone number were readily identifiable by internet search. Thus, Entergy maintained, Defendants could not reasonably establish that they suffered any prejudice by its omission. Entergy cited *Bayou Bridge Pipeline, LLC v. 38.00 Acres*, 19-565 (La.App. 3 Cir 7/15/20), 304 So.3d 529, noting that a panel of this court maintained the denial of an exception of prematurity where the expropriating authority failed to include certain information allegedly required by La.R.S. 19:2.2 in its notice to the property owner. The panel remarked that, not only was the information not required by the statute as it existed at the time the expropriating authority extended its offer, but the panel also noted that the property owner could not identify any way in which he was prejudiced by the lack of information or in what way that information would have changed his defense of the case. Entergy suggested that Defendants similarly demonstrated no prejudice in this case.

---

[1] Defendants subsequently answered the petitions and filed reconventional demands, alleging that Entergy exceeded the limits of its existing servitudes. Those issues are not now before the court.

Following a hearing, the trial court sustained the exceptions of prematurity and dismissed Entergy's suits without prejudice. The trial court did not reach the remaining exceptions.

Entergy appeals from the resulting judgments. This court granted Entergy's Motion to Consolidate Appeals and now considers the matter under this common discussion. Entergy assigns the following as error:

1. The district court erred by dismissing an expropriation lawsuit as premature because La. R.S. 19:2.2 is considered directory even though mandatory language is employed.

2. The district court erred by dismissing an expropriation lawsuit as premature when the defendants suffered no prejudice from the omission of an item identified in La. R.S. 19:2.2.

## DISCUSSION

*Exception of Prematurity*

The dilatory exception of prematurity, as provided by La.Code Civ.P. art. 926, questions whether a cause of action is ripe for judicial determination. *See Williamson v. Hosp. Serv. Dist. No. 1 of Jefferson*, 04-451 (La. 12/1/04), 888 So.2d 782. The party pleading the exception bears the burden of proving prematurity. *Id.* "The trial court's granting of an exception of prematurity is a final judgment subject to the manifest error standard of review unless it involves a question of law." *Barlow v. Garber*, 17-401, p. 2 (La.App. 3 Cir. 11/2/17), 230 So.3d 1002, 1004. The latter instance requires the appellate court to review the decision *de novo*. *Gibbs v. Comprehensive Med. Mentoring Program*, 25-116 (La.App. 4 Cir. 8/8/25), 420 So.3d 253.

*Expropriation*

Although both the United States Constitution and the Louisiana Constitution authorize expropriations for a public purpose, both reflect the careful balance

3

between the extraordinary power granted the government and the substantial and meaningful interference with the right to private property. United States Constitution Amendment V provides that: "No person shall . . . be deprived of life, liberty or property without due process of law; nor shall private property be taken for public use, without just compensation." Likewise, La.Const. art. 1, § 4(A) declares that "[e]very person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power."

Specific to the utility expropriation underlying this case, Article 1, § 4 further ensures that:

> (B)(1) Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. Except as specifically authorized by Article VI, Section 21 of this Constitution property shall not be taken or damaged by the state or its political subdivisions: (a) for predominant use by any private person or entity; or (b) for transfer of ownership to any private person or entity.

> (2) As used in Subparagraph (1) of this Paragraph and in Article VI, Section 23 of this Constitution, "public purpose" shall be limited to the following:

> (a) A general public right to a definite use of the property.

> (b) Continuous public ownership of property dedicated to one or more of the following objectives and uses:

> . . . .

> (v) *Public utilities for the benefit of the public generally.*

(Emphasis added.)

While Article 1, § 4(B)(2)(v) specifically enumerates the availability of expropriation in this case, it does so within the context of the due process considerations afforded such takings. Further, "[s]ince expropriation proceedings are

4

in derogation of the right of individuals to own property, the law governing these proceedings must be strictly construed against the expropriating authority." *State, ex rel. Dep't of Transp. & Dev. v. Estate of Davis*, 572 So.2d 39, 42 (La.1990). *See also State ex rel. Dep't of Highways v. Jeanerette Lumber & Shingle Co., Ltd.*, 350 So.2d 847 (La.1977).

The associated statutory rules regulating the manner in which an expropriation may be affected offer limits as well. *See Estate of Davis*, 572 So.2d 39. Louisiana Revised Statutes 19:2[2] provides, in pertinent part:

> Prior to filing an expropriation suit, an expropriating authority *shall attempt in good faith to reach an agreement as to compensation with the owner of the property sought to be taken and comply with all of the requirements of R.S. 19:2.2.* If unable to reach an agreement with the owner as to compensation, any of the following may expropriate needed property:
>
> . . . .
>
> (7) Any domestic or foreign corporation, limited liability company, or other legal entity created for the purpose of, or engaged in, generating, transmitting, and distributing or for transmitting or distributing electricity and steam for power, lighting, heating, or other such uses subject to the following qualifications. Property located in Louisiana may be expropriated exclusively by an electric public utility as defined in R.S. 45:121 or an affiliated entity either for a transmission or generation project that is approved and included in a multistate regional transmission organization's or independent system operator's transmission expansion plan or identified by such regional transmission organization or independent system operator as necessary for the reliability of the electric system or necessary for the interconnection of a generator, or for generating plants, buildings, transmission lines, stations or substations, distribution lines, or other associated facilities if a majority of the electricity or steam power to be generated, transmitted, or distributed in connection with these intended facilities will be delivered to end-users located within Louisiana. The generating plants, buildings, transmission lines, stations, and substations expropriated or for which property was expropriated shall be so located, constructed, operated, and maintained as not to be dangerous to persons or property nor interfere with the use of the wires of other wire using

---

[2] We note the legislature has enacted 2026 La. Acts No. 391, which amends and reenacts La.R.S. 9:2. That amendment is immaterial to the present matter.

companies or, more than is necessary, with the convenience of the landowners. The terms "Regional Transmission Organization" and "Independent System Operator" shall have the meanings provided by 16 U.S.C. 796. In the event that any provision or provisions of this Paragraph are declared invalid or unenforceable by any court of competent jurisdiction, the remaining terms and provisions that are not affected thereby shall remain in full force and effect.

(Emphasis added.)

Titled "Expropriation by expropriating authorities referred to in R.S. 19:2," La.R.S. 19:2.2 provides, in pertinent part:

A. Before exercising the rights of expropriation provided by R.S. 19:2, any expropriating authority referred to in R.S. 19:2 shall comply with the following:

(1) Provide the owner whose property is to be taken with the following information from its appraisal or evaluation as to the amount of compensation due the owner for the full extent of his loss:

(a) The name, address, and qualifications of the person or persons preparing the appraisal or evaluation.

(b) The amount of compensation estimated in the appraisal or evaluation.

(c) A description of the methodology used in the appraisal or evaluation.

(2) Offer to compensate the owner a specific amount not less than the lowest appraisal or evaluation.

B. Not more than thirty days after making an offer to acquire an interest in property, if no agreement has been reached with the property owner, each expropriating authority identified in R.S. 19.2, other than the state or its political corporations or subdivisions, shall provide to the property owner a notice that includes all of the following:

(1) A statement that the property owner is entitled to receive just compensation for the property to be acquired to the fullest extent allowed by law.

(2) A statement that the property may be expropriated only by an authority authorized by law to do so.

(3) A statement that the property owner is entitled to receive from the expropriating authority a written appraisal or evaluation of the amount of compensation due.

6

(4) A statement identifying the website of the expropriating authority where the property owner can read the expropriation statutes upon which the expropriating authority relies or a copy of the expropriation statutes upon which the expropriating authority relies.

(5) A statement offering to provide upon request of the property owner a copy of the expropriation statutes upon which the expropriating authority relies.

(6) *A statement identifying an agency responsible for regulating the expropriating authority, including the name, website, and telephone number of the agency.*

(7) A statement that the property owner may hire an agent or attorney to negotiate with the expropriating authority and an attorney to represent the property owner in any legal proceedings involving the expropriation.

C. In addition to the requirements of Subsection A of this Section, each expropriating authority other than the state or its political corporations or subdivisions shall, at least thirty days prior to the filing of a petition for expropriation, send a letter by certified mail, return receipt requested, to the owner at his last known address setting forth in detail or attaching the following:

(1) The basis on which the expropriating authority exercises its power.

(2) The purpose, terms, and conditions of the proposed acquisition.

(3) The compensation to be paid for the rights sought to be acquired.

(4) A complete copy of all appraisals of, or including, the subject property previously obtained by the expropriating authority.

(5) A plat of survey signed by a Louisiana licensed surveyor illustrating the proposed location and boundary of the proposed acquisition, and any temporary servitude or work spaces. If the expropriating authority is unable to obtain access to the property for formal surveying, a plat that fairly identifies the proposed boundary and servitude may be utilized.

(6) A description and proposed location of any proposed above-ground facilities to be located on the property.

(7) A statement by the entity of considerations for the proposed route or area to be acquired.

(Emphasis added.)

Referencing these two statutes, Defendants continue to offer the linear argument that La.R.S. 19:2 sets forth the requirements that an expropriating authority must follow "prior to filing an expropriation suit," including compliance with "*all of the requirements* of R.S. 19:2.2." (Emphasis added.) And, in turn, La.R.S. 19:2.2(B) requires that the notice include specific, delineated information, including the "name, website, and telephone number" of the agency regulating the expropriating authority. As Entergy's notice did not contain either the LPSC's website or telephone number, Defendants argue, Entergy "did not comply with all of the requirements of R.S. 19:2.2" prior to filing its expropriation suit as required by La.R.S. 19:2.

*Statutory Construction*

In its first assignment of error, Entergy acknowledges that its notice did not include the website or telephone number as described by La.R.S. 19:2.2 and further recognizes that the statute identifies information that "shall" be included in the notice. Entergy points out, however, that the statute does not set forth dismissal of the petition as a "penalty" for failure to provide the information. Entergy contends that it would be improper for the court to read such a penalty into the statute absent a positive legislative expression in that regard. Rather, the court should examine whether the legislature intended for the statutory language to be mandatory or directory in nature. Entergy maintains that if the intent is found to be directory, then it must be viewed as the legislature's mere guidance to public officials. Entergy suggests that a provision may be directory in nature even if the legislature used the

8

mandatory language "shall," particularly when the legislature has not included a penalty or consequence for the failure to do so. *Citing Marks v. New Orleans Police Dep't*, 06-575 (La. 11/29/06), 943 So.2d 1028 and *Bannister v. Department of Streets*, 95-404 (La. 1/16/96), 666 So.2d 641.

As the legislature did not provide a "penalty" for failure to follow the dictates of La.R.S. 19:2.2(B), Entergy maintains, the statute must be viewed as merely informing the expropriating authority of what to include in the notice. Such a "technical violation," as Entergy terms its omission of the regulatory agency's website and telephone number, should not serve to "give a private citizen an argument that the expropriation action must be dismissed as premature." Rather, Entergy argues, the supreme court has explained that although laws are not to be construed so as to make any provision meaningless, "it is not the function of the judicial branch in a civilian legal system to legislate by inserting penalty provisions into statutes where the legislature has chosen not to do so." *Carter v. Duhe*, 05-390, p. 10 (La. 1/19/06), 921 So.2d 963, 970.

Entergy's argument, however, presumes that the dismissal of its petition is a "penalty" for its failure to strictly comply with the notice requirements of La.R.S. 19:2.2. Entergy's preferred framework, however, does not reflect the nature of the exception of prematurity. Entergy's argument instead assumes that its right to enforce its action had accrued.

As stated above, the dilatory exception questions whether the cause of action has matured to the point where it is ripe for judicial determination. *See Williamson*, 888 So.2d 782; *see also Demouchet v. Nexion Health Mgmt.*, 25-438 (La.App. 3 Cir. 5/6/26), _ So.3d _(2026 WL 1326385). The exception neither challenges nor attempts to defeat a plaintiff's underlying cause of action; it is instead merely a

procedural mechanism by which a defendant contends that a plaintiff has not taken the preliminary steps required to make the action ripe for judicial review. *Spradlin v. Acadia-St. Landry Med. Found.*, 98-1977 (La. 2/29/00), 758 So.2d 116. Further, La.Code Civ.P. art. 933(A) (emphasis added) requires that "[i]f the dilatory exception pleading prematurity is sustained, the premature action, claim, demand, issue or theory *shall be dismissed.*" Thus, dismissal of Entergy's petition is not a "penalty" that must necessarily have been provided for in the statute itself. The dismissal instead follows the trial court's recognition that Entergy brought its cause of action before its right to do so accrued. The action was premature, subject to dismissal mandated by La.Code Civ.P. art. 933.

This procedural construct is seen in jurisprudence observing that "[a] medical malpractice claim against a qualified health care provider is subject to a dismissal on a timely exception of prematurity if such claim has not first been reviewed by a pre-suit medical malpractice panel. *See* La.R.S. 40:1231.8. *See also Dupuy* [*v. NMC Operating Co., L.L.C.*, 15-1754, p. 3 (La. 3/15/16), 187 So.3d 436, 438.]" *Kelleher v. Univ. Med. Ctr. Mgmt. Corp.*, 21-11, p. 3 (La. 10/10/21), 332 So.3d 654, 657. Louisiana Revised Statutes 40:1231.8(A)(1)(a) states that "[a]ll malpractice claims against health care providers covered by this Part . . . shall be reviewed by a medical review panel[.]" Paragraph(B)(1)(a)(i) (emphasis added) further provides that "*No action* against a health care provider covered by this Part, or his insurer, *may be commenced in any court* before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section." As with the filing of an expropriation proceeding, the legislature set forth steps that must be taken before the filing of a medical malpractice claim and, as here, did so without positively stating that a dismissal of the petition would occur if the prerequisite was

not met. Dismissal in those malpractice cases followed as a function of the timely filed exception of prematurity.

The same is true in this case as the legislature has set forth the preliminary steps that must be taken before the right to enforce the expropriation action accrues. It did so with mandatory language reflective of the due process safeguards demanded by the extraordinary power granted the expropriating authority. Again, La.R.S. 19:2 plainly requires that "[p]rior to filing an expropriation suit, an expropriating authority shall attempt in good faith to reach an agreement as to compensation with the owner of the property sought to be taken and comply with all of the requirements of R.S. 19:2.2." Louisiana Revised Statutes 19:2.2(A), in turn, demands that "*[b]efore exercising the rights of expropriation provided by La.R.S. 19:2*," the expropriating authority shall comply with the requirements pertaining to an offer to compensation. In the event no agreement on the offer is reached, Paragraph B requires that the expropriating authority "*shall* provide to the owner a notice that includes *all* of the following: . . . (6) A statement identifying an agency responsible for regulating the expropriating authority, including the name, *website, and telephone number of the agency.*" (Emphasis added.)

This legislative expression is not equivocal. It is not tentative. There is no indication that the language is offered merely as guidance. Instead, the legislature set forth clear, delineated steps that an expropriating authority "shall" take prior to filing an expropriation suit. The well-established rules of statutory construction demand that the interpretation of any statutory provision starts with the language of the statute itself. *Pellecer v. Werner Co.*, 24-1492 (La. 10/24/25), 421 So.3d 919. The use of that language supports the view that the procedure set forth in La.R.S. 19:2 and La.R.S. 19:2.2 is mandatory. While Entergy characterizes its deviation from

11

La.R.S. 19:2.2's requirements as a "technical" omission, we nonetheless recognize that "[e]xpropriation laws are special and exceptional in character, in derogation of common rights, and as such, must be strictly construed." *ExxonMobil Pipeline Co. v. Union Pac. R.R. Co.*, 09-1629, p. 7 (La. 3/16/10), 35 So.3d 192, 197. That strict construction in this case indicates that the omission is not one to be readily overlooked. The omission instead bears on the issue of whether the action is ripe for judicial determination. If it is not, dismissal is required pursuant to La.Code Civ.P. art. 933.

Finally, we are mindful of Entergy's assertion that the trial court's dismissal for prematurity is at odds with La.R.S. 19:8's requirement that "[e]xpropriation suits shall be tried by preference and with the greatest possible dispatch." *See also* La.Civ.Code art. 13 ("Laws on the same subject must be interpreted in reference to each other.") However, Entergy's reliance on the exigency demanded by La.R.S. 19:8 again presumes that the right to enforce the "expropriation suit" has accrued. Here it has plainly not.

This foundational difference also undermines Entergy's reliance on jurisprudence indicating that statutes may be considered directory even though mandatory language is employed. The plaintiffs in those cases did not bring suits before their right to enforcement accrued. Rather, the statutory and/or civil service rules examined for directory versus mandatory language in those cases was within the context of suits properly positioned for judicial determination. *See Marks*, 943 So.2d 1028; *Carter v. Duhe*, 921 So.2d 963; *Bannister*, 666 So.2d 641. *See also Stow-Serge v. Side by Side Redevelopment, Inc.*, 20-15 (La.App. 4 Cir. 6/10/20), 302 So.3d 71, *writ denied*, 20-870 (La. 10/14/20), 302 So.3d 1120. Those cases, and the question of whether those statutory provisions included penalty provisions, did not

address situations in which dismissal was required pursuant to La.Code Civ.P. art. 933 due to prematurity.

In contrast, the trial court in this case examined the accrual of Entergy's right to enforce its expropriation action and found that it had not yet been perfected pursuant to the legislature's expression. Given the important considerations surrounding matters of expropriation, we find no error in that ruling. Accordingly, this assignment of error lacks merit.

*Prejudice*

As it did before the trial court, Entergy turns to this court's opinion in *Bayou Bridge*, 304 So.3d 529, suggesting that when a property owner cannot show that he suffered any prejudice by a deviation from the notice requirements of La.R.S. 19:2.2, the granting of an exception of prematurity is not warranted. Not only does the present case factually differ from *Bayou Bridge*, but that earlier case does not stand for the proposition cited.

In *Bayou Bridge*, the property owner claimed that the expropriating authority failed to properly provide notice "under La.R.S. 19:2.2(B), subsections (4)-(7), in particular." *Id*. at 555. The panel observed, however, that the expropriating authority "made its initial offer" to the defendant "prior to the law taking effect." *Id.* As the revision to La.R.S. 19:2.2(B) created additional obligations for the expropriating authority, the revision was substantive in nature and applicable prospectively only. Therefore, "*the disputed information was not required to be given when the initial offer was made in 2016.*" *Id.* (Emphasis added.) The omitted information was not a factor in whether the expropriating authority's right to pursue the expropriation action had accrued, resulting in the panel's affirmation of the trial court's denial of the exception of prematurity. The same cannot be said in this case as La.R.S.

19:2.2(B)(7), with its requirement for a website and telephone number, was in effect at all pertinent times.

We recognize that the panel in *Bayou Bridge* went on to state that, "*[a]dditionally*, we can find no error in the trial court's finding that the lack of said information did not prejudice" the property owner. *Id.* at 555. (Emphasis added.) The panel's inclusion of that alternative reasoning tracked the trial court's dismissal of the defendants' exceptions of prematurity, "finding sufficient service and a lack of prejudice to Defendants." *Id.* at 535.

In contrast to *Bayou Bridge*, the notice in this case was not sufficient and, thus, the case was not ripe for judicial determination as it was in that earlier case. At no point in the panel's discussion in *Bayou Bridge* did it indicate that the enumerated portions of La.R.S. 19:2.2 are suggestive and/or that a property owner citing a deficiency of the required notice must prove prejudice. The panel was addressing a situation in which both the notice was satisfactory, and the property owner could not identify a way in which he was prejudiced "by the lack of the '*missing*' information[.]" *Id.* at 555. (Emphasis added). While the information cannot have been said to be actually "missing" in *Bayou Bridge* due to the inapplicability of La.R.S. 19:2.2(B)(4)—(7), hence the emphasis of the term, the same is not true in this case. Instead, all requirements of La.R.S. 19:2.2(B) were applicable. The subject information in this case was required and thus truly "missing." Accordingly, we find no error in the trial court's finding of prematurity absent a finding of prejudice.

This assignment lacks merit.

### DECREE

For the foregoing reasons, the judgments of the trial court dismissing the Petitions for Expropriation of Personal Servitudes of Rights of Use filed by

14

Plaintiff/Appellant Entergy Louisiana, LLC are affirmed. Costs of this proceeding are assigned to Entergy Louisiana, LLC.

**AFFIRMED.**